PAUL J. FISHMAN
United States Attorney
JORDAN M. ANGER
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
Tel. 973-645-2829
Fax. 973-297-2010
email: jordan.anger@usdoj.gov

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>      v.<br><br>WEI JIANG,<br><br>           Defendant. | *Civil Action No.* |

### COMPLAINT OF THE UNITED STATES

The United States, through its undersigned counsel, alleges the following:

    1.    The United States alleges violations of the Civil False Claims Act, as amended, 31 U.S.C. §§ 3729-33, violations of the common law giving rise to causes of action for unjust enrichment and payment by mistake of fact, and other violations of federal law and regulations, and seeks from Wei Jiang damages, civil penalties, and other legal and equitable remedies available to this Court.

### JURISDICTION AND VENUE

    2.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1345, 28 U.S.C. § 1331, and 31 U.S.C. § 3732(a).

3. This Court has personal jurisdiction over the defendant because, among other things, he is located within this district, he submitted false claims for payment by the United States in this district, he made false statements to the United States in this district, and he engaged in other wrongdoing in this district.

4. Venue is proper in this district under 28 U.S.C. §§ 1391(b), 1391(c), and 31 U.S.C. § 3732(a). Jiang is located in and did transact business in this district.

PARTIES

5. The plaintiff in this action is the United States of America, specifically the National Science Foundation ("NSF") and the Department of the Army ("Army").

6. Defendant Jiang was, at all relevant times, a member of faculty at Stevens Institute of Technology ("Stevens Tech"), located in Hoboken, New Jersey. Stevens Tech was the recipient of grants from NSF and the Army. Defendant Jiang was the Principal Investigator ("PI") on certain Stevens Tech grants from NSF and the Army. Defendant Jiang is and was at all relevant times domiciled in New Jersey.

7. NSF is an independent federal agency created by Congress in 1950 "to promote the progress of science; to advance the national health, prosperity, and welfare; to secure the national defense...." With an annual budget of about $6.85 billion, NSF is the funding source for approximately 20 percent of all federally supported basic research conducted by America's colleges and universities. In many fields such as mathematics, computer science, and the social sciences, NSF is the major source of federal backing.

8. The U.S. Army Research, Development and Engineering Command (ARDEC), located at Picatinny Arsenal, New Jersey contracts with eligible institutions for work on

research and development projects for programs in support of national defense. Over the past decades, ARDEC has worked with Stevens Tech using three different government contracts.

## INTRODUCTION

9.    The allegations in this complaint arise out of Mr. Jiang's submission of claims through Stevens Tech for payment by NSF and/or the Army which were either knowingly false or were unreimbursable pursuant to NSF grants and/or Army contracts.

## LEGAL FRAMEWORK

10.    Pursuant to the False Claims Act, any person who, in reckless disregard or deliberate ignorance of the truth, or with actual knowledge, presents or causes to be presented a false or fraudulent claim to the United States for payment or approval or makes uses, or causes to be made a false record or statement material to a false or fraudulent claim, is liable for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461), for each claim, plus three times the amount of the damages sustained by the United States because of the false claims.   31 U.S.C. § 3729.

11.    Stevens Tech and Defendant Jiang were recipients of federal grant funds, the receipt and use of which were and are subject to and governed by federal laws, regulations, and policies, including, but not limited to, the False Claims Act, 31 U.S.C §§ 3729 *et seq.*, as amended; Office of Management and Budget ("OMB") Circular A-21 (Cost Principles for Educational Institutions, 2 C.F.R. part 220); OMB Circular A-II0 (Uniform Administrative Requirements for Grants with Institutions of Higher Education,

2 C.F.R. part 215); OMB Circular A-133 (Audits of States, Local Governments, and Non-Profit Organizations); the Federal Acquisition Regulation ("FAR"); NSF grant conditions; and Army contract clauses.

12. Stevens Tech submitted a research proposal to the Army with defendant Jiang as a co-PI. Based on that proposal, the Army issued Delivery Order 21 on Contract W15QKN-05-D-0011 (Purchase Order SAP6000013326) to Stevens Tech with defendant Jiang as a co-PI, effective 30 November 2006 to 1 December 2007, for $266,657.

13. Stevens Tech submitted a proposal to NSF with defendant Jiang as the PI. Based on that proposal, NSF awarded grant 0542881 to Stevens Tech with defendant Jiang as the PI, effective 1 March 2006 to 28 February 2011, for $400,000.

A. The NSF Grant Program

14. The United States, through NSF, makes grants to eligible institutions and individuals for the purpose of funding research and education projects in math, science, and engineering. 42 U.S.C. §1861 *et seq.*

15. Grants are awarded to applicant institutions and individuals through a competitive process solely on the basis of project merit. NSF Proposal & Award Policies & Procedures Guide, Chap. III.[1]

16. NSF requires that each grant proposal be electronically signed by an Authorized Organizational Representative (AOR), an "administrative official who, on behalf of the proposing organization is empowered to make certifications and assurances

---

1 Available at nsf.gov/pubs/policydocs/pappguide/nsf10_1/gpg_3.jsp.

and can commit the organization to the conduct of a project that NSF is being asked to support as well as adhere to various NSF policies and grant requirements." See NSF Proposal & Award Policies & Procedures Guide at 7.

17.     NSF requires that each grant progress report be electronically signed by the PI, "the individual designated by the grantee [organization], and approved by NSF, who will be responsible for the scientific or technical direction of the project." See NSF Proposal & Award Policies & Procedures Guide at 8 & 105.

18.     The grantee organization is required quarterly to submit a Federal Cash Transactions Report (FCTR; prior to July 2007) or a Federal Financial Report (FFR; starting July 2007) to NSF reporting on funds expended under each of its NSF grants, certifying "that all disbursements have been made for the purposes and conditions . . . of the awards."[2]

19.     Each grantee institution is responsible and accountable for all funds, property and other assets acquired under the grant and is responsible for assuring that they are used solely for authorized purposes.  OMB Circular A-110, 2 C.F.R. § 215.21(b)(3).

---

2 See https://www.fastlane.nsf.gov/NSFHelp/flashhelp/fastlane/FastLane_Help/step_3_certify_save_and_submit_an_fctr.htm (FCTR); https://www.fastlane.nsf.gov/NSFHelp/flashhelp/fastlane/FastLane_Help/print_ffr_certification_to_pdf.htm (FFR).

B.  <u>The Army Contract</u>

20.  The United States, through the Army, contracts with eligible institutions for the purpose of conducting research and development.  Contracts are awarded to eligible institutions in accordance with the Federal Acquisition Regulation.

21. Each institution that is awarded a contract is accountable for insuring that when it requests payment that the requested payment is authorized solely for authorized costs and purposes in accordance with the contract and the property and other assets furnished under the contract are used solely for authorized purposes. (Federal Acquisition Regulation 52.216-7)

22.  In accordance with the contract Stevens Tech was required to submit bi-monthly progress reports on the work performed on the contract and delivery orders issued in accordance with contract.

C.  <u>The Proper Charging of Costs to Federal Grants and Contracts</u>

23.  The OMB Circulars cited above establish that NSF grant funds shall be expended solely in accordance with the approved application and budget, the terms and conditions of the award, and the applicable cost principles.

24.  NSF grant funds may be expended only for allowable costs of the activities for which the grant was awarded.  NSF can recover unallowable costs charged to a grant. OMB Circular A-21, 2 C.F.R. part 220, App. A, Sections C.2. to C.4. and C.8.

25.  Under Army Research Contract W15QKN-05-D-011, Stevens Tech could only expend funds for allowable costs and activities authorized by Contract

W15QKN-05-D-011 and Delivery Order 21. The U.S. Army can recover unallowable costs charged to the contract (Federal Acquisition Regulation 52.203-8).

D.   Stevens Tech's Legal Responsibilities

26.   With respect to NSF grant funds, Stevens Tech is the grantee and legal entity responsible for overseeing and monitoring the use of the federal grant monies, and, through a university official, responsible for certifying the truth of statements in grant applications and progress reports.

27.   Stevens Tech, as an NSF grantee organization:

> Has full responsibility for the conduct of the project or activity supported under th[e] award and for adherence to the award conditions . . . . By acceptance of th[e] award, the grantee agrees to comply with the applicable Federal requirements for grants and cooperative agreements and to the prudent management of all expenditures and actions affecting the award. Documentation for each expenditure or action affecting th[e] award must reflect appropriate organizational reviews or approvals that should be made in advance of the action.

NSF Grant General Conditions, ¶ 1.a-c.

28.   With respect to Army contract funds, on U.S. Army Contract W15QKN-05-D-001, Delivery Order 21, Stevens Tech agreed that it was entitled to payment for costs incurred for performance of its work as described in its progress reports in accordance with the Federal Acquisition Regulations, those costs included direct labor, direct supplies and indirect costs. (Federal Acquisition Regulation 52.216-7).

29.   The causes of action alleged herein are timely brought on the basis of when an official of the United States with responsibility to act under the circumstances knew the essential elements of the causes of action alleged herein.

30. Defendant Jiang fraudulently concealed from the United States his wrongdoing in connection with the allegations made herein.

### FACTUAL ALLEGATIONS AGAINST JIANG
### BY THE UNITED STATES OF AMERICA

A. <u>Jiang's Federal Award Funds</u>

31. Upon information and belief, in 2003 Stevens Tech hired Jiang as Assistant Professor, School of Systems and Enterprises.

32. From 2006 to 2008, Jiang was PI on grant 0542881, awarded by NSF for $400,000 to Stevens Tech.

33. From 2002 to 2006, Jiang was co-PI on grant DMI-0200224, awarded by NSF for $211,004 to Georgia Tech, funded under a $109,000 subaward from Georgia Tech to Stevens Tech.

34. From 2006 to 2007, Jiang was co-PI on Delivery Order 21 which was issued under U.S. Army TACOM-ARDEC Contract W15QKN-05-D-0011 for $366,657 to Stevens Tech.

B. <u>False Claims Under Federal Grants</u>

35. Jiang submitted false claims to Stevens Tech for $15,977.60 in fraudulent travel expenses, which Stevens Tech paid to Jiang from NSF grants and/or Army contract.   As a result of Jiang's false claims, Stevens Tech added its indirect costs (at the rate of 35.6%, $5,688.03) and submitted false claims to the United States for $21,665.63.

36. For example, on or about July 23, 2008, Jiang submitted false claims to Stevens Tech for fraudulent travel receipts for costs incurred for purportedly traveling to Alaska to attend an academic conference, when, in fact, no such conference took place in

Alaska at that time. Upon information and belief, Jiang traveled to Alaska to take a leisure cruise.

37. Upon information and belief, Jiang has reached a plea agreement ("Plea Agreement") with the United States in relation to criminal charges arising out of those fraudulent travel expenses. Pursuant to the Plea Agreement, Jiang has agreed to, *inter alia*, make restitution to the United States in the amount of $19,819.49.

38. Jiang also submitted false claims to Stevens Tech for $13,408 in fraudulent personal expenses, which Stevens Tech paid to Jiang from NSF grants and/or Army contract. As a result of Jiang's false claims, Stevens Tech added its indirect costs (at the rate of 35.6%, $4,773.25) and submitted false claims to the United States for $18,181.25. These fraudulent personal expenses are not subject to the Plea Agreement.

39. For example, Jiang submitted receipts for personal costs incurred for purchasing a blue tooth head-set, a video game (Wii) controller, a brown guest chair and an item purchased at a leather goods store, as well as numerous receipts for impermissible meal expenses. None of these expenses were reimbursable from NSF grants and/or Army contract.

40. Upon information and belief, Jiang submitted claims to Steven Tech for fraudulent travel expenses or fraudulent personal expenses seeking Stevens Tech payment from NSF grants and/or Army contract on at least 20 occasions.

## COUNTS

### FIRST CAUSE OF ACTION

(31 U.S.C. § 3729(a)(1))

(False Claims Act; Presentation of False Claims: NSF Grants and Army Contract)

41. Plaintiff repeats and realleges each allegation in Paragraphs 1 through 40, as if fully set forth herein.

42. Defendant knowingly presented or caused to be presented false claims for payment to the United States.

43. By virtue of the false, fraudulent, or fictitious claims made by the defendant, the United States suffered damages and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each such false claim presented or caused to be presented by the defendant.

### SECOND CAUSE OF ACTION

(31 U.S.C. § 3729(a)(2))

(False Claims Act; Making or Using or Causing to be Made
or Used a False Record or Statement: NSF Grants and Army Contract)

44. Plaintiff repeats and realleges each allegation in paragraphs 1 through 40 as if fully set forth herein.

45. Defendant knowingly made, used, or caused to be made or used false records or statements to get false or fraudulent claims paid or approved by the United States.

46. By virtue of the false, fraudulent, or fictitious claims made by the defendant, the United States suffered damages and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each such false claim presented or caused to be presented by the defendants.

## PRAYER FOR RELIEF

WHEREFORE, the United States demands and prays that judgment be entered in favor of the United States as follows:

1. On the First and Second Causes of Action under the False Claims Act, as amended, for $99,721.15 (representing treble damages for the fraudulent travel expenses and fraudulent personal expenses submitted to the United States, crediting $19,819.49 paid in restitution pursuant to the Plea Agreement) and between $110,000 and $220,000 in civil penalties as are required by law, together with such further relief as may be just and proper.

                                            PAUL J. FISHMAN
                                            United States Attorney

                            By:   *s/ Jordan M. Anger*
                                   JORDAN M. ANGER
                                   Assistant U.S. Attorney